# 25-384

————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

BRETT CHRISTIAN, FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
PLAINTIFFS-APPELLANTS,

JOHN BORON,
PLAINTIFF,

v.

STEVEN G. JAMES, MICHAEL J. KEANE, Acting District Attorney,
DEFENDANTS-APPELLEES.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

————————————

**BRIEF FOR THE DISTRICT OF COLUMBIA, ILLINOIS, CALIFORNIA,
COLORADO, CONNECTICUT, DELAWARE, HAWAII, MARYLAND,
MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW
MEXICO, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON AS *AMICI
CURIAE* IN SUPPORT OF APPELLEES AND AFFIRMANCE**

————————————

(*Counsel on next page*)

BRIAN L. SCHWALB
Attorney General for the District of
Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ANNE A. DENG
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 442-9807
ashwin.phatak@dc.gov

KWAME RAOUL
Attorney General for the State of Illinois

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General for the
State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

(*Additional counsel on signature page*)

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI CURIAE ..................................... 1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT ............................................................................ 3

I.  The Second Amendment Allows States To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence. ......................................................................... 3

II.  Consistent With Regulations Adopted By Other States, New York's Designation Of Public Parks As "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations. .......................................... 7

    A.  Firearms pose special risks in crowded gathering spots. ..................... 8

    B.  Restricting firearms in sensitive places protects vulnerable populations. .......................................................................... 12

    C.  Sensitive-place designations help to protect the exercise of other constitutional rights. .............................................................. 14

CONCLUSION .......................................................................... 15

# TABLE OF AUTHORITIES

*Cases*

*Antonyuk v. James,*
 120 F.4th 941 (2d Cir. 2024) ............................................................ 2, 7, 8, 12

*District of Columbia v. Heller,*
 554 U.S. 570 (2008) ................................................................ 1, 3, 4, 5, 6, 8, 14

*McDonald v. City of Chicago,*
 561 U.S. 742 (2010) ......................................................................... 3, 5, 6

*Medtronic Inc. v. Lohr,*
 518 U.S. 470 (1996) ................................................................................. 3

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
 597 U.S. 1 (2022) .............................................................. 1, 3, 5, 6, 7, 8, 13, 14

*United States v. Class,*
 930 F.3d 460 (D.C. Cir. 2019) .................................................................. 8, 12

*United States v. Morrison,*
 529 U.S. 598 (2000) ................................................................................. 4

*United States v. Rahimi,*
 602 U.S. 680 (2024) ......................................................................... 3, 5, 6, 7

*Voisine v. United States,*
 579 U.S. 686 (2016) ................................................................................. 8

*Statutes and Regulations*

13 Vt. Stat. Ann. § 4023 ......................................................................... 13

18 Pa. Cons. Stat. Ann. § 912 .................................................................. 13

80 Ind. Admin. Code 11-2-2 .................................................................... 11

430 Ill. Comp. Stat. 66/65 .................................................................. 11, 13

Ala. Code § 13A-11-61.2 ...................................................................... 11

Ark. Code Ann. § 5-73-122 ................................................................... 13

Cal. Penal Code § 26230 ....................................................................... 11

Colo. Rev. Stat. § 18-9-118 .................................................................. 11

D.C. Code § 7-2509.07 .......................................................................... 12

D.C. Code § 22-4502.01 ........................................................................ 13

Ga. Code Ann. § 16-11-127.1 ............................................................... 13

Haw. Rev. Stat. § 134-9.1 ..................................................................... 12

La. Rev. Stat. § 40:1379.3 ..................................................................... 11

Mich. Comp. Laws Ann. § 28.425o ...................................................... 13

Minn. Stat. § 97A.091 ........................................................................... 11

Mo. Rev. Stat. § 571.107 ....................................................................... 13

Mont. Code § 87-5-401 .......................................................................... 11

N.C. Gen Stat. § 14-277.2 ..................................................................... 11

N.D. Cent. Code § 62.1-02-05 .............................................................. 13

N.J. Stat. Ann. § 2C:58-4.6 ....................................................... 11, 13, 14

N.M. Stat. Ann. § 29-19-8 ..................................................................... 13

N.Y. Penal Law §265.01-e ...................................................................... 2

Neb. Rev. Stat. § 28-1202.01 ................................................................ 14

S.C. Code Ann. § 16-23-20 ................................................................... 13

Tex. Penal Code § 46.03 .............................................................. 11, 13

W. Va. Code Ann. § 61-7-11a ................................................................ 13

Wash. Rev. Code Ann. § 9.41.300............................................................ 14

Wyo. Stat. Ann. § 6-8-104 ..................................................................... 13

*Other*

Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727 (2018)...................................... 10

Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60 (2022) ................................................ 9

David Hemenway et al., *Gun Use in the United States: Results from Two National Surveys*, 6 Injury Prevention 263 (2000) ............................ 10

*Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (Jun. 15, 2023) .................................................................... 10

Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881 (2019)...... 12

Jessica Garrison & Tony Briscoe, *4 injured, hundreds flee in shooting at Davis community picnic*, L.A. Times (Apr. 12, 2025).................................. 9

Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139 (2021) ....................................................................... 11, 14

Kelly Alvarado, *Protestors Rally Outside Brentwood State Park in Response to the Breonna Taylor Grand Jury Verdict*, Shades of Long Island (Sept. 29, 2020)................................................................... 14

Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12, 2013)................................................. 9

N.Y. Parks, Recreation, & Historic Pres., *State Parks and Historic Sites Where Alcohol Can Be Consumed Without a Permit* (Jan. 28, 2015).............. 10

iv

*One teen is killed and eight others are wounded in shooting at Milwaukee park party, police say*, AP (July 22, 2024) ......................................................... 9

Rich Place, *Hundreds Rally in Allegany State Park to Stop Budget Cuts*, The Bradford Era (Mar. 15, 2010) ................................................................... 14

*When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139 (2021) ......................... 11, 14

### INTRODUCTION AND INTEREST OF AMICI CURIAE

Amici the District of Columbia, Illinois, California, Colorado, Connecticut, Delaware, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington (collectively, "Amici States") submit this brief in support of defendants-appellees under Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a responsibility to ensure the health, safety, and welfare of their communities. That responsibility includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. Amici States have historically fulfilled this responsibility by implementing reasonable measures to regulate firearms, including by imposing location-based restrictions on carrying guns. Such regulation does not conflict with the Second Amendment. As the Supreme Court has consistently recognized, the Second Amendment does not encompass the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)), but rather leaves states and localities with the flexibility they need to protect their communities.

Indeed, the Second Amendment "leaves [jurisdictions with] a variety of tools for combating [the] problem" of gun violence. *Heller*, 554 U.S. at 636. This

flexibility is an essential element of our federalist system, and it ensures that firearm regulations appropriately and effectively address the specific concerns in each locality. Although Amici States have taken different approaches to regulating firearms, they share an interest in addressing gun violence in ways that are tailored to the needs of their residents. Amici States seek to maintain their authority to address firearm-related issues through legislation that is consistent with historical tradition and responsive to the unique circumstances in their communities.

## SUMMARY OF ARGUMENT

In 2023, following the Supreme Court's opinion in *Bruen*, New York enacted the Concealed Carry Improvement Act ("CCIA"), which comprehensively reformed the statutory regime governing concealed carry within the State. As relevant here, plaintiffs challenge a provision of the CCIA (public-parks provision) that prohibits possessing a weapon in "public parks," excluding both "privately held land within a public park not dedicated to public use" and "forest preserve[s]." N.Y. Penal Law §265.01-e(2)(d). The parties filed cross-motions for summary judgment and the district court granted summary judgment to defendants, finding itself "bound" by this Court's decision in *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024). Supplemental Appendix 3. Plaintiffs appealed, seeking a different outcome than the one this Court reached in *Antonyuk*.

Amici States agree with New York that its public-parks provision does not violate the Second Amendment because it fits squarely within a long tradition of constitutionally acceptable regulations that states have adopted to protect their residents. The sensitive place at issue in this case—public parks—is analogous to the types of locations that states have designated, and continue to designate, as sensitive: designations that limit firearm possession in crowded places, around vulnerable populations, and where individuals are exercising other constitutionally protected rights. As in other jurisdictions, New York's sensitive-place designations protect the public from the heightened risk of gun violence in such locations.

## ARGUMENT

I. **The Second Amendment Allows States To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence.**

Since the Founding, states have enacted restrictions on who may bear arms, where arms may be brought, and the manner in which arms may be carried. *See United States v. Rahimi*, 602 U.S. 680, 693-98 (2024); *Bruen*, 597 U.S. at 50-59; *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010); *Heller*, 554 U.S. at 626-27. New York's public-parks provision is one in a long line of state regulations designed to make gun possession and use safer for the public.

States have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic*

3

*Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotation marks omitted). Enacting measures to promote public safety—particularly those that are tailored to local circumstances—falls squarely within the reasonable exercise of state police powers. Indeed, there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000).

The Supreme Court has repeatedly affirmed state authority in this area, even as it has defined the scope and import of the rights conferred by the Second Amendment. In each of its major Second Amendment opinions—*Heller*, *McDonald*, *Bruen*, and *Rahimi*—the Court expressly acknowledged the important role states play in setting their own policies to minimize the risk of gun violence, consistent with our Nation's historical tradition.

In *Heller*, the Court made clear that the right to keep and bear arms is "not unlimited." 554 U.S. at 626. Although states may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens, they still possess "a variety of tools" to combat the problem of gun violence in a way that is responsive to the needs of their communities. *Id.* at 636. States may, for example, implement measures prohibiting certain groups of people from

possessing firearms, and they may "forbid[] the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 626-27.

The Court reiterated this point in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" a state's "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute."). Recognizing that "conditions and problems differ from locality to locality," *id.* at 783, the Court made clear that "state and local experimentation with reasonable firearms regulations" could and should continue "under the Second Amendment," *id.* at 785 (brackets and internal quotation marks omitted).

*Bruen* confirmed these principles. There, the Court explicitly stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of provisions "designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" 597 U.S. at 38 n.9 (quoting *Heller*, 554 U.S. at 635). And, building on *Heller*, the Court "assume[d] it settled" that prohibiting firearms in sensitive locations—including "schools and government buildings," "legislative assemblies, polling places, and courthouses," and "new and analogous sensitive places"—is constitutional. *Id*. at 30 (emphasis omitted).

Most recently, in *Rahimi*, the Court again explained that "the right secured by the Second Amendment is not unlimited" and should not be understood to protect

5

the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 602 U.S. at 690-91 (quoting *Heller*, 554 U.S. at 626-27). Indeed, the Court elaborated, "[a]t the founding, the bearing of arms was subject to regulations ranging from rules about firearm storage to restrictions on gun use by drunken New Year's Eve revelers" to "ban[s] [on] the carrying of dangerous and unusual weapons . . . [and] concealed firearms." *Id.* at 691 (internal quotation marks omitted).

These decisions make clear that states retain the power to enact laws to protect their residents and that those laws need not be uniform: states are free to select "solutions to social problems that suit local needs and values," ensuring that firearm regulations appropriately and effectively address the specific circumstances in each state. *McDonald*, 561 U.S. at 785. As the Court emphasized in *Bruen*, the Second Amendment is not a "regulatory straitjacket." 597 U.S. at 30. Rather, states are permitted to enact a wide range of firearm regulations. *See id.* at 80 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

Nor are states limited to precisely the same laws that were enacted in the past. *See Rahimi*, 602 U.S. at 691 (the Court's "precedents were not meant to suggest a law trapped in amber."). Thus, in *Bruen*, the Court instructed courts to "use analogies" to long-recognized sensitive places—such as schools and government

buildings—to "determine [whether] modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 597 U.S. at 30 (emphasis omitted); *see Rahimi*, 602 U.S. at 740 (Barrett, J., concurring) (describing "the 'sensitive places' principle that limits the right to public carry" as a principle from which states and courts could analogize).  And in *Rahimi*, the Court reiterated that *Bruen* does not demand a "historical twin," 602 U.S. at 701, but instead requires courts to "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit," *id.* at 681.

In short, as this Court has cautioned, "courts must be particularly attuned to the reality that the issues we face today are different than those faced in medieval England, the Founding Era, the Antebellum Era, and Reconstruction."  *Antonyuk v. James*, 120 F.4th 941, 970 (2d Cir. 2024), *cert. denied*, No. 24-795, 2025 WL 1020368 (U.S. Apr. 7, 2025).  States retain not only the freedom, but also the fundamental responsibility, to implement reasonable measures designed to respond to the needs of their communities and to protect their residents from the harms associated with gun violence.

## II. Consistent With Regulations Adopted By Other States, New York's Designation Of Public Parks As "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations.

As the Supreme Court has consistently recognized, the right to "bear" firearms in public has long been understood to permit restrictions on bearing arms in

"sensitive places." *Heller*, 554 U.S. at 626; *see Bruen*, 597 U.S. 30 (reaffirming that in sensitive places, "arms carrying [can] be prohibited consistent with the Second Amendment"). Because people "can preserve an undiminished right of self-defense by not entering [such] places" or by "taking an alternate route," *United States v. Class*, 930 F.3d 460, 465-66 (D.C. Cir. 2019) (internal quotation marks omitted), laws restricting firearms in places identified as sensitive "neither prohibit nor broadly frustrate any individual from generally exercising his right to bear arms," *Voisine v. United States*, 579 U.S. 686, 714 (2016) (Thomas, J., dissenting).

New York's designation of public parks as sensitive places is a reasonable and appropriate response to the heightened risk associated with the presence of firearms in such locations. Specifically, like other sensitive-place designations, the challenged provision seeks to prevent gun violence in particularly crowded places, around vulnerable populations, or where individuals are exercising other constitutionally protected rights.

### A.     Firearms pose special risks in crowded gathering spots.

To start, states frequently restrict the use of firearms in places where conditions may create special risks to health and safety. As this Court has recognized, designating such areas as sensitive places helps to preserve order and diminish the possibility of conflict escalating into violence in gathering locations and other crowded spaces. *See Antonyuk*, 120 F.4th at 1027 (finding that "a high

8

population density in discrete, confined spaces, such as quintessential public squares, has historically justified firearm restrictions"); *see also* Carina Bentata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60, I.-68 (2022) ("The number of potential targets . . . and the increased risk of conflict all seem to be relevant in the historical determination that an area constitutes a sensitive place."). Governments may therefore choose to restrict the use of firearms in places where the presence of large numbers of people creates risks to health and safety, such as in public parks.

In such locations, firearm use is likely to end in tragedy—not only for the innocent bystanders who may be shot, but also for others who may be injured attempting to escape alongside a panicked crowd. *See, e.g.*, Jessica Garrison & Tony Briscoe, *4 injured, hundreds flee in shooting at Davis community picnic*, L.A. Times (Apr. 12, 2025), https://tinyurl.com/msnrh2b5; *One teen is killed and eight others are wounded in shooting at Milwaukee park party, police say*, AP (July 22, 2024), https://tinyurl.com/yem6jj5x; Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12, 2013), http://tinyurl.com/2p2xpvxk.

These dangers are heightened in locations where crowds can become volatile because of the presence of alcohol, which, in New York, includes many public parks.

*See* N.Y. Parks, Recreation, & Historic Pres., *State Parks and Historic Sites Where Alcohol Can Be Consumed Without a Permit* (Jan. 28, 2015), https://tinyurl.com/3v39ufa3 (allowing alcohol in certain park areas). When individuals consume alcohol—which impairs both judgment and dexterity—the risk of either accidental or intentional use of firearms increases. *See* David Hemenway et al., *Gun Use in the United States: Results from Two National Surveys*, 6 Injury Prevention 263, 266 (2000), https://tinyurl.com/55yf7d3m ("Regular citizens with guns, who are sometimes tired, angry, drunk or afraid, and who are not trained in dispute resolution or when it is proper to use a firearm, have many opportunities for inappropriate gun use."). Further, given the "weapons effect," wherein the presence of a weapon primes individuals to think and act more aggressively, merely allowing firearms in these spaces may invite violence. *See* Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727, 730-31 (2018), https://tinyurl.com/34cnpvmd.

Firearms can also inhibit the safe and effective operation of locations, such as public parks, where large numbers of people gather. The discharge of a firearm in or near a park may cause a disruptive and inconvenient shut-down. *See, e.g.*, *Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (Jun. 15, 2023), http://tinyurl.com/mrxw7nbh. And even the perceived risk of gun

10

violence can undermine park operations because individuals may be discouraged from visiting parks when they know that others may be armed. *See* Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139, 141 (2021) ("Gun laws protect people's freedom and confidence to participate in every domain of our shared life, from attending school to shopping, going to concerts, gathering for prayer, voting, assembling in peaceable debate, counting electoral votes, and participating in the inauguration of a President.").

Recognizing these dangers, many states have chosen to restrict firearms in locations, including public parks, where large numbers of people tend to gather. Some, like New York, restrict firearms in parks themselves. *See, e.g.*, Cal. Penal Code § 26230(a)(12); 430 Ill. Comp. Stat. 66/65(a)(13); N.J. Stat. Ann. § 2C:58-4.6(a)(10); Minn. Stat. § 97A.091, subd.1(1); Mont. Code § 87-5-401(1). Others restrict firearms at stadiums, fairgrounds, and parade routes that, like parks, host large gatherings and events. *See, e.g.*, Ala. Code § 13A-11-61.2(a)(5), (6) (school and professional athletic events); 80 Ind. Admin. Code 11-2-2(b) (fairgrounds); La. Rev. Stat. § 40:1379.3(N)(9) (parades); N.C. Gen Stat. § 14-277.2(a) (parades, picket lines, funeral processions); Tex. Penal Code § 46.03(a)(4), (13) (racetracks and amusement parks). And still others restrict firearms in public-transit facilities and public-transit vehicles, which likewise are often crowded. *See* Colo. Rev. Stat.

11

§ 18-9-118; D.C. Code § 7-2509.07(a)(6); Haw. Rev. Stat. § 134-9.1(a)(13). By taking steps to prevent the unique dangers of firearm violence in crowded gathering spots, these laws help to support the inclusion and participation of all members of the community in these public spaces.

**B.     Restricting firearms in sensitive places protects vulnerable populations.**

New York's restrictions on carrying firearms in parks also help to protect the particularly vulnerable populations that frequent these locations, such as children and their caregivers, elderly individuals, and persons with disabilities. Such individuals cannot easily defend themselves or escape a violent attack, should one occur. And even if they are not physically harmed by firearms, exposure to such violence can cause psychological harm. *See* Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881, 888 (2019), https://tinyurl.com/2vwsed8n (indirect exposure to gun violence, including witnessing violence or hearing gunshots, can be traumatic to children).

Courts have recognized that the regular presence of vulnerable people (such as children, the sick, and the elderly) in a particular location is a strong indication that it may be deemed sensitive for Second Amendment purposes. *See, e.g.*, *Antonyuk*, 120 F.4th at 1012 (finding historical "tradition of prohibiting firearms in locations where vulnerable populations congregate"); *Class*, 930 F.3d at 465 (places

are designated as sensitive "because of the people found there" (internal quotation marks omitted)).

Indeed, many states have enacted laws that, like New York's public-parks provision, exclude firearms from places that welcome vulnerable segments of the population. For instance, in addition to prohibiting firearms in public parks, *supra* at 11, some states prohibit firearms at playgrounds or youth centers. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(12); N.J. Stat. Ann. § 2C:58-4.6(a)(10). Other states bar firearms in and around schools, *see, e.g.*, Ark. Code Ann. §§ 5-73-122(a)(3)(D)(ii); D.C. Code § 22-4502.01(a); 18 Pa. Cons. Stat. Ann. § 912(b); Wyo. Stat. Ann. § 6-8-104(t)(ix), and at school functions, *see, e.g.*, Ga. Code Ann. § 16-11-127.1(b)(1); N.D. Cent. Code § 62.1-02-05(1)(a); W. Va. Code Ann. § 61-7-11a(b)(1)(B), (C). States also prohibit weapons in daycare centers and preschools. *See, e.g.*, Mich. Comp. Laws Ann. § 28.425o(1)(b); N.M. Stat. Ann. § 29-19-8(C); N.J. Stat. Ann. § 2C:58-4.6(a)(8)-(9); S.C. Code Ann. § 16-23-20(A)(6). Additionally, many states prohibit firearms at hospitals, in nursing homes, or in other healthcare facilities. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(7); Mo. Rev. Stat. § 571.107(1)(17); Tex. Penal Code § 46.03(a)(11); 13 Vt. Stat. Ann. § 4023(a). Like New York, these jurisdictions have acted to protect vulnerable populations by designating the spaces where they congregate as sensitive places where carrying firearms is prohibited.

13

**C.    Sensitive-place designations help to protect the exercise of other constitutional rights.**

States also frequently designate locations as sensitive places to protect the exercise of other constitutional rights.  And the Supreme Court has recognized that areas in which constitutionally protected activities occur—such as courthouses, polling places, and legislative assemblies—are quintessential examples of sensitive places.  *See Bruen*, 597 U.S. at 30; *Heller*, 554 U.S. at 626-27.

Thus, states have designated as sensitive places the sites of rallies and protests, and other locations where political speech occurs.  *See, e.g.*, Neb. Rev. Stat. § 28-1202.01(3); N.J. Stat. Ann. § 2C:58-4.6(a)(6); Wash. Rev. Code Ann. § 9.41.300(2).  The same reasoning applies to public parks, which often are the site of protected speech.  *See* Kelly Alvarado, *Protestors Rally Outside Brentwood State Park in Response to the Breonna Taylor Grand Jury Verdict*, Shades of Long Island (Sept. 29, 2020), https://tinyurl.com/4e2aeu22; Rich Place, *Hundreds Rally in Allegany State Park to Stop Budget Cuts*, The Bradford Era (Mar. 15, 2010), https://tinyurl.com/wm6d9yvb.  Not only are these locations sometimes targets of violence, but the mere presence of firearms and the implicit threat that firearms communicate could chill individuals' peaceful exercise of their speech rights.  *See* Blocher & Siegel, *supra* at 141.

In sum, New York's public-parks provision fits comfortably within both the longstanding practice of other states and the bounds of the Second Amendment.

## CONCLUSION

The Court should affirm the decision below.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for
the District of Columbia

KWAME RAOUL
Attorney General for
the State of Illinois

CAROLINE S. VAN ZILE
Solicitor General

JANE ELINOR NOTZ
Solicitor General

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK
Principal Deputy Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

ANNE A. DENG
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
for the State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

Office of the Attorney General
for the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 442-9807
ashwin.phatak@dc.gov

May 2025

ROB BONTA
*Attorney General*
State of California

PHILIP WEISER
*Attorney General*
State of Colorado

WILLIAM TONG
*Attorney General*
State of Connecticut

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

ANTHONY G. BROWN
*Attorney General*
State of Maryland

ANDREA J. CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

DANA NESSEL
*Attorney General*
State of Michigan

KEITH ELLISON
*Attorney General*
State of Minnesota

AARON D. FORD
*Attorney General*
State of Nevada

MATTHEW J. PLATKIN
*Attorney General*
State of New Jersey

RAÚL TORREZ
*Attorney General*
State of New Mexico

DAN RAYFIELD
*Attorney General*
State of Oregon

PETER F. NERONHA
*Attorney General*
State of Rhode Island

CHARITY R. CLARK
*Attorney General*
State of Vermont

NICHOLAS W. BROWN
*Attorney General*
State of Washington

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because the brief contains 3,188 words, excluding exempted parts.

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 9, 2025, an electronic copy of the foregoing was filed with the Clerk of Court using the electronic filing system and thereby served upon all counsel appearing in this case.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK